UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NASSER SALEH, | : | |
| Plaintiff, | : | Civil Action No. 19-13944 (KM) (MAH) |
| v. | : | |
| EGGLINGER INSURANCE AGENCY, LLC D/B/A GEICO INSURANCE; BERKSHIRE HATHAWAY INC.; KARA ROGICH; TARA EGGLINGER; ABC CORPS I-X, | : | OPINION |
| Defendants. | : | |

## I. INTRODUCTION

This matter comes before the Court by way of Plaintiff Nasser Saleh's Motion to Amend his Complaint and add Government Employees Insurance Company ("GEICO") as a Defendant pursuant to Fed. R. Civ. P. 15(a)(2). The Undersigned has considered the matter without oral argument. *See* Local Civ. R. 78.1(b). For the reasons set forth herein, the Undersigned will deny Plaintiff's motion.

## II. BACKGROUND

This civil suit arises from alleged workplace discrimination and retaliation under Section 1981 of the Civil Rights Act of 1866[1] ("Section 1981") and the New Jersey Law Against

---

[1] 42 U.S.C. § 1981.

Discrimination[2] ("NJLAD").[3] *See* Prop. Amend. Compl. ¶ 1, December 16, 2019, D.E. 10-1. Defendant Tara Egglinger ("Egglinger") owns and operates Defendant Egglinger Insurance Agency ("EIA"), a franchised third-party vendor of Government Employees Insurance Company ("GEICO"). *Id.* ¶ 10. EIA sells insurance and is located in Hackensack, New Jersey. *Id.* ¶¶ 3, 10. Defendant Kara Rogich ("Rogich") is a Zone/District Manager at GEICO, and oversees various field offices in New Jersey, Delaware, West Virginia, and Maryland. *Id.* ¶ 9. Defendants Berkshire Hathaway, Inc. ("Berkshire") and GEICO also sell insurance in New Jersey. *Id.* ¶ 8. Plaintiff, a resident of Passaic County, New Jersey, was hired by EIA on March 12, 2018. *Id.* ¶¶ 7, 13. There, he alleges, he held a hybrid position of Customer Service Representative and Sales Agent. *Id.* ¶ 13. During the application and interview stage, Plaintiff noted to EIA that he was bilingual in English and Arabic, and he expressed that he could use his knowledge of Arabic on the job; EIA responded that the idea was "great." *Id.* ¶ 12.

According to Plaintiff, despite the positive application process, the relationship between him and EIA quickly soured. On his first day of work, Plaintiff asked Rogich if he could say his prayers in the break room; Rogich denied the request, and Plaintiff was informed that he could only pray in his car during his lunch break. *Id.* ¶¶ 14-15. Additionally, though a few new customers had specifically requested to work with Plaintiff due to his proficiency with Arabic, Rogich and Plaintiff's manager informed Plaintiff that he could no longer speak in Arabic to customers, as no other EIA employees could understand or monitor him. *Id.* ¶¶ 17-18.

---

[2] N.J. Stat. Ann., 10:5-1 *et seq.*

[3] The Court assumes as true the factual allegations in the proposed amended complaint. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992). For that reason, the Court declines to consider the declaration of Christian A. Cavallo, Esq. and the exhibits attached thereto in assessing the merits of the Plaintiff's motion, and mentions it below solely in reciting the procedural history.

Shortly thereafter, Plaintiff learned that EIA coworkers were talking about him in Spanish, a language which he could not understand. *Id.* ¶ 20. Plaintiff alleges that on April 13, 2018, he learned that a coworker had complained about him in Spanish to Plaintiff's manager, Miguel. According to Plaintiff, the incident caused him to conclude that he was experiencing unfair workplace discrimination on the basis of his nationality. *Id.* ¶¶ 21-23. On April 17, 2018, Plaintiff met with Rogich, Egglinger, and Miguel to discuss the April 13th incident. *Id.* ¶ 26. Plaintiff expressed his displeasure with how he had been treated in his time with EIA, including the rule against speaking Arabic to customers. *Id.* Rogich informed Plaintiff that he needed to "let go of the issue," and if he could not, he could not work at EIA. *Id.* ¶ 27. Plaintiff, feeling like he had no choice in the matter, resigned from EIA that day. *Id.* ¶ 28. A few months later, on June 18, 2019, Plaintiff filed this underlying action.

The manner in which GEICO came to be involved in this action is relevant to understanding the procedural history of this action. It is not, however, germane to the Court's ruling on the instant motion. Plaintiff's original Complaint included Berkshire as a defendant in place of GEICO. *See* Compl., June 18, 2019, D.E. 1. Berkshire warned Plaintiff that the claims against it were frivolous, and that Berkshire would seek sanctions under Federal Rule of Civil Procedure 11 if Plaintiff did not dismiss Berkshire from the action. *See* Exhibit C to Declaration of Christian A. Cavallo, Esq., Jan. 7, 2020, D.E. 12-4. In the Rule 11 letter, Berkshire also stated that while Plaintiff did not assert claims against GEICO or serve GEICO with a copy of the Summons and Complaint, the Complaint nonetheless referred to GEICO. Accordingly, defense counsel advised Plaintiff's counsel that any amendment to name GEICO as a Defendant would be frivolous. *Id.* In response to this letter, Plaintiff voluntarily dismissed Berkshire from the action. *See* Mot. to Amend, D.E. 10; Order of Dismissal, D.E. 11. Plaintiff now moves to amend the Complaint and add GEICO as

a Defendant in place of Berkshire. *See* Prop. Amend. Compl., D.E. 10-1. Aside from replacing Berkshire with GEICO in the caption, there are no changes (substantive or otherwise) from the original Complaint. *Compare id. with* Docket Exhibit 1. It appears that the core fact in the Amended Complaint tying EIA to GEICO is found in paragraph 10, in which Plaintiff describes EIA as a franchised third-party vendor of GEICO. Prop. Amend. Compl. ¶ 10.

GEICO opposes Plaintiff's motion to amend, resting primarily on the ground that the claims asserted against GEICO in the amended complaint are futile as a matter of law. *See* Docket Exhibit 12. GEICO argues that the existence of a franchisor-franchisee relationship, by itself, is insufficient to impose liability on the franchisor for the franchisee's actions under the NJLAD. *Id.* at 16-18. GEICO also notes that caselaw interpreting § 1981 have concluded that § 1981 bars vicarious liability. *Id.* at 15-16.

### III. ANALYSIS

Rule 15 of the Federal Rules of Civil Procedure governs motions to amend the pleadings. It states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court has discretion to determine whether to grant leave to amend the pleadings and may deny leave where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, GEICO asserts that the proposed claims are futile.

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotation marks omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule

4

12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A two-part analysis determines whether this standard is met. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler*, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3rd Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted)).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Fowler*, 578 F.3d at 211. As the Supreme Court instructed in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Although this is not a "probability requirement," the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct" to make a showing of entitlement to relief. *Id.* at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task . . . requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

As noted above, Plaintiff's proposed Amended Complaint labels EIA as a franchisee of GEICO, and appears to rest the claims against GEICO on that basis. Consequently, the futility analysis will be conducted through the lens of a franchisor/franchisee relationship. In assessing liability of a franchisor to a franchisee, "[c]ourts have consistently held that the franchisor/franchisee relationship does not create an employment relationship between a franchisor and a franchisee's employees." *Ping Chen v. Domino's Pizza, Inc.*, No. 09-107, 2009 WL 3379946, at *10 (D.N.J. Oct. 16, 2009). Even the outward branding and physical appearances of the franchisee are not dispositive in this inquiry, as "'the mere fact that a franchisor's sign appears on a building and the employees within that building wear uniforms bearing the franchisor's logo and insignia'" does not necessarily impose liability upon the franchisor based on the franchisee's misconduct. *D'Agostino v. Domino's Pizza*, No. 17-11603, 2018 WL 1914239, at *19 (D.N.J. Apr. 23, 2018) (quoting *Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034, 1036 (8th Cir. 1998)). Instead, the analysis must focus on the degree of control that the franchisor exerts over the franchisee's operations. *See id.*; *see also Pona*, 155 F.3d at 1036. In the pleading context, caselaw instructs that specific facts pertaining to the franchisor's control are necessary to survive a motion to dismiss; it is simply not enough to plead that the franchisor meets the definition of an "employer" under a given law, as that assertion is merely a "bare assertion" of legal conclusions that a court must not consider. *See Ping Chen*, 2009 WL 3379946, at *14 (noting that the plaintiff had merely alleged that the franchisor qualified as an employer, failing to plead more than a "formulaic recitation of the elements of [the] cause of action").

The court's decision in *Michalak v. ServPro Indus.* is instructive when analyzing whether a complaint meets the pleading standard within the context of a franchisor/franchisee relationship. No. 18-1727, 2019 WL 3562690, at *1-2 (D.N.J. Aug. 6, 2019). *Michalak* addressed a franchisor's

6

(ServPro's) liability for the alleged workplace discrimination and harassment of its franchisee. Servpro moved to dismiss on the basis that it did not exercise the requisite degree of control to subject it to liability. *Id.* at *7. The court denied the motion, finding that the complaint adequately plead that ServPro exercised control over the franchisee's affairs. The court noted:

> Plaintiff allege[d] that ServPro issued manuals, training materials and/or other writings setting forth the methods, standards, specifications, policies and procedures that it required [the franchisee] to follow. This material included documentation and other specific writings that contained methods, standards, specifications, policies and procedures for management and operation of a ServPro franchise. . . Furthermore, ServPro designated certain trainings as mandatory for [the franchisee]. These trainings included employment and personnel practices, including the training and discipline of [the franchisee's] employees and [the franchisee's] hiring and firing decisions.

*Id.* (citations omitted) (internal quotation marks omitted). Those allegations, the court concluded, were sufficient to survive defendant's Rule 12(b)(6) motion. *Id.* at *13. But the *Michalak* court was careful to distinguish those particularized allegations from assertions of "generalized control," whereby a franchisor implements standard practices and procedures for the franchisee and established branding guidelines, all without rising to the level of day-to-day control that would implicate liability. *Id.* at *12-13 (citing *D'Annunzio v. Prudential Ins. Co. of America*, 192 N.J. 110, 125 (NJ 2007)). Indeed, case law reinforces this proposition that a franchisor must go beyond mere branding and general operation guidelines to open itself up to liability for the conduct of the franchisee. *See, e.g.*, *Myers v. Garfield & Johnson Enters.*, 679 F. Supp. 2d 598, 602 (E.D. Pa. 2010) (extending liability to a franchisor who administered detailed policies, compliance manuals, and extensive training procedures to its franchisee). This analysis applies not only within the context of Plaintiff's NJLAD claims, but also within the context of the § 1981 claims. *See General*

*Bldg. Construction Ass'n v. Pa.*, 458 U.S. 375, 395 (1982) (noting that even if respondeat superior could apply in a Section 1981 case, an agency relationship must still exist between the entities).

In the instant case, Plaintiff's proposed Amended Complaint is devoid of any specific allegations that GEICO asserts control over EIA's operations. Aside from stating that EIA was a franchised third-party vendor of GEICO, Plaintiff provides no allegations to illustrate that GEICO had control over EIA's day-to-day operations. To be sure, Plaintiff *does* group all the defendants together and claims that they all meet the definition of an "employer" under any applicable statute. *See* Prop. Amend. Compl. ¶ 8. However, that assertion is merely a bald legal conclusion and is entitled to no deference under *Iqbal*.[4] Even if Plaintiff argues that this statement was a factual allegation, "[l]egal conclusions made in the guise of factual allegations are given no presumption of truthfulness." <u>Smith v. Lyons, Doughty & Veldhuis, P.C.</u>, C. A. No. 07-5139, 2008 WL 2885887, at *2 (D.N.J. July 23, 2008) (citing <u>Wyeth v. Ranbaxy Labs., Ltd.</u>, 448 F. Supp. 2d 607, 609 (D.N.J. 2006)). Unlike *Michalak* and *Myers*, there are no facts alleged in the proposed Amended Complaint that provide any evidence of control measures such as training procedures, policy manuals, or operations mandates from GEICO to EIA. The Court appreciates that discovery might be necessary to develop such allegations. However, even at this stage, the Court cannot simply overlook the complete absence of any meaningful allegations that GEICO exercises a requisite degree of control over EIA. Finally, as noted in *D'Agostino* above, even if EIA is doing business under the branding of GEICO, that prospect, without more, falls short of establishing the requisite level of control that would impose liability onto GEICO for the actions of EIA's employees.

---

[4] Moreover, group pleading is impermissible. *See Zuniga v. Am. Home Mrtg.*, No. 14-2973, 2016 WL 886214, at *2 (D.N.J. Mar. 7, 2016) (a plaintiff is required to "specify which defendants performed which acts"); *see also Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (a plaintiff fails to satisfy Rule 8 pleading requirements when his complaint "provide[s] only conclusory allegations against Defendants as a group").

*D'Agostino*, 2018 WL 1914239 at *19. Consequently, Plaintiff's Amended Complaint as it pertains to GEICO would not survive Rule 12(b)(6) scrutiny, and must be denied as futile. Plaintiff's motion is denied without prejudice. If, in the course of discovery, Plaintiff discovers credible evidence that allows him to make more specific allegations of control by GEICO over EIA's daily operations to impose a claim based on the franchisor-franchisee relationship, Plaintiff may seek to amend at that time.

**IV.   CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Amend is denied without prejudice. An Order accompanies this Opinion.


*s/ Michael A. Hammer*
**Hon. Michael A. Hammer**
**United States Magistrate Judge**


**Dated:  March 25, 2020**